UTICA,
August, 1823.

LOCKWOOD
v.
BULL.

(g) 2 *Saund.* 84, *a. n.* 1.  1 *Ch. Pl.* 621.

---

## LOCKWOOD, Sheriff, *against* BULL and EAGER.

A sheriff, having, by execution, levied on the goods of B, took a receipt therefor, from B and E, by which they promised to re-deliver them, on demand, and they were left on B's premises. On the day appointed for the sale, the goods were re-delivered to the sheriff; but he was, at the same time, served, by the defendant, with an order to stay proceedings. After some dispute, about the effect of the order, the receiptors finally agreed to receive the goods again on the terms contained in the receipt; and they were left as before. The sheriff appointed another day for the sale, and advertised accordingly ; but, in the mean time, the goods were removed by J, (who claimed them as his own) with the consent, and in the presence of E ; but they remained openly in the county, accessible to the sheriff. He demanded them of the receiptors, who did not deliver them. *Held*, that this was a conversion in E, but not in B.

TROVER, for certain articles of household furniture, farming utensils, and books. Plea, the general issue. The cause was tried at the *Orange* Circuit, *November* 12th, 1821, before the Hon. *A. Spencer*, late Chief Justice.

One who receives goods to keep, and re-deliver to the owner, but delivers them over to a third person, or suffers him to take them, is guilty of a conversion.

Demand and refusal are, *prima facie*, evidence of a conversion, but may be repelled, by giving any matter in evidence which shews there is no conversion.

Though assumpsit, or case, will lie against a bailee, yet trover may also be brought, if a conversion can be proved.

In an action, in form, *ex delicto*, one may be found guilty, and another acquitted.

The election of actions, by a bailor against a bailee, in several kinds of bailment, considered ; with the effect of such election on the proof to support or defend the action brought, and the nature of the defence.

The delivery, to another, of property levied upon by a sheriff, or leaving it under his control, is a sufficient consideration for a promise to re-deliver it to the sheriff ;

And this, whether the promise be written or parol.

The sheriff has a sufficient property, in goods levied upon by him, to maintain trespass or trover, for taking them away, or converting them.

The plaintiff, to support his action, produced *Abijah O. Houghton*, one of the acting deputies of the plaintiff, as a witness ; who testified, that by virtue of an execution, issued out of the Court of Common Pleas, of *Orange* county, for $1332,17, in favour of one *Smith*, against the defendant, *Bull*, the witness, on the 9*th September*, 1818, levied on the goods and chattels in question, then in the possession of *Bull* ; that after having made the levy, and taken an inventory, the defendants executed a receipt, annexed to the inventory, dated the same day, in the words following :  " Whereas, the goods and chattels specified in the above inventory, have been levied on by execution, by *Thomas S. Lockwood*, Sheriff of *Orange County*, and left in the possession of us, the undersigned, at our special instance and request ; in consideration of the above, we do engage and promise, that said property shall be forth coming, whenever called for by the said Sheriff, or any of his deputies."   Upon the execution of this receipt, the witness left the property, and advertised the same for sale, for *Friday*, the 18*th September*, on the premises of *Bull ;* on which day he went there, for the purpose of selling, and demanded the goods.  The defendants informed him that they were all there.   Another witness proved, that the goods were there, as represented by the defendants. *Eager* expressed an unwillingness to stand security any longer for the forthcoming of the property ; and wished to be relieved from his responsibility :  At which moment, *Edward N. James*, who acted as *Bull's* attorney, served an order on the deputy, under the hand of the first Judge of the *Orange Common Pleas*, directing a stay of proceedings under the execution ; and, after considerable dispute in relation to the effect of the order, he went away, and left the premises and property.   On the *Sunday* evening of the 20*th September*, *James* took and carried away from the premises, a part of the property, consisting of a *clock, bureau* and *table*, and the next morning, the deputy went to *Bull's*, for the purpose of securing the property, but never did repossess himself of the goods in question.   After being there a short time, *James* also came.  A dispute immediately ensued, between *James* and the deputy, about the property. *James*

said the deputy was a trespasser, and had no business with the property, as long as the order was not vacated. During the dispute, *James* and the defendants often conferred together, and the defendants at length concluded to become responsible again, for the forthcoming of the property. The inventory and receipt were shown to them in the presence of *James*, and they agreed, that this inventory and their undertaking should remain as formerly; and that they would continue responsible : in consideration of which undertaking, the deputy then went away, and, a few days thereafter, advertised the property for sale, as before. On the day of sale, he again attended, and sold all he could find. *James* and the defendants were also present at the sale ; and after thus selling, he presented to the defendants the inventory and receipt, and demanded the remainder of the property, which was not delivered ; having been removed several days before by *James*, and then being in his possession. A short time after the sale, in a conversation with *Eager*, in relation to his responsibility for the property, *Eager* said, he did not care a fig about it, for he was indemnified. It also appeared that *Eager* acknowledged that *James* had indemnified him. The plaintiff also proved, that after the re-assumption, *James* took and carried away the most valuable part of the goods and chattels, from off the premises, in the presence of, and with the assent and knowledge of *Eager*. It was then proved, that the goods and chattels, (except the *bureau, clock* and *table*) which were demanded, and not delivered, and had not been sold, were worth $576,77. It was then admitted, on the part of the plaintiff, that the property had, ever since the levy, remained in the county of *Orange* ; that it was taken by *James*, claiming to be the owner, openly, and kept openly a short distance from the place where the levy was made, with the full knowledge of the Deputy Sheriff, and has been, at all times, accessible to him. A verdict was taken for the plaintiff, for $576,77, subject to the opinion of the Court, on the above case.

*Booth*, for the plaintiff. The plaintiff, having shewn property in himself, relies on the demand and refusal, as legal evidence of a conversion. Even if there had been no evidence of what became of the property, the plaintiff would be entitled to recover upon this evidence.(a) Again : here was an actual conversion, by surrendering the property to *James*, which the defendants knew would defeat the intended sale, and subject the Sheriff to hazard and expense.(b) Neither *James'* acts, nor the Sheriff's knowledge of them, form any excuse for the defendants. The fair inference from the case is, that the defendants were privy to the designs of *James*, and acted in concert with him. There is reason to believe, that they received the goods, originally, with the design of favouring his claim.

UTICA,
August, 1823.

LOCKWOOD,
v.
BULL.

(a) *Durell*
v. *Mosher*, 8
*John.* 445.
*Bristol* v.
*Burt*, 7 *id.*
254. *Hotch-*
*kiss* v. *M'Vick-*
*ar*, 12 *id.* 407.
*La Place* v.
*Aupoix*, 1
*John. Cas.*
406.

(b) *Murray*
v. *Ogden &*
*Burling*, 10
*John.* 172.

*Wisner*, contra. 1. There was no consideration for the second agreement of the defendants. The goods were at the place, according to the first undertaking ; the order to stay proceedings was served : and it appears from the case, that the Sheriff never re-possessed himself of the goods ; so that he could not re-deliver them to the defendants, as a consideration for their second undertaking.

2. The plaintiff, if he can recover at all, has mistaken his remedy. The action should have been *assumpsit*. The basis of the suit was the written promise ; on which assumpsit would clearly have lain. Where the party has a clear remedy, it is against the policy of the law, to allow him to resort to a doubtful one. This case is not distinguishable from *Serjeant* v. *Blunt*.(c) There the defendant received the goods for sale ; and thereby assumed to obey the plaintiff's directions. He sold them contrary to orders ; and the Judge, who delivered the opinion of the Court, says, (*p.* 76) " if every departure from instructions is to expose a man to an action of trover, I should consider it as introducing a new rule, which might operate injuriously. There is no need of this refinement. An action on the case is well calculated to redress any injury arising from a breach of instructions." To maintain trover, the act must be tortious. *Bull* cannot be liable ; for no tortious act is shewn on his part. He re-

(c) 16 *id.* 74.

ceived, and assumed with *Eager*, to return the goods, but they were out of his possession, when the demand was made. They were removed without his interference, directly or indirectly. No tortious act of *Eager* is shewn. The goods were merely removed in his presence ; and he did not object to it. Indeed, he had no authority to object, after having surrendered the goods to the Sheriff on the 18*th*. Not being re-delivered, he had no longer any control over them. No conversion is shewn. The plaintiff's right, derived from a levy under the *fi. fa.* could not be changed, while the goods remained in the county, openly, with his knowledge, and at all times accessible to him. To shew a conversion, *ex vi termini*, implies that some change must be shewn in the property of the goods. In the case of *Syeds* v. *Hay*,(d) which goes farthest to maintain the action, *Buller, J.* says, " If a person take my horse to ride, and leave him at an inn, that is a conversion; for, though I may have my horse on sending for him, and *paying for the keeping of him, yet it brings a charge upon me.* So has the defendant, by putting these goods into the custody of the wharfinger, *brought a charge on the plaintiff.*" It will be seen by a subsequent part of the opinion, that the wharfage became due by the delivery.

(d) 4 *T. R.* 264.

3. The damages are too high. It is evident, from the case, that they are for the value of the goods, excepting the *bureau, clock* and *table,* (which had been taken away by *James*, before the second agreement) and such articles as were sold by the Sheriff. Of the articles which *James* took and carried away, a part only were removed in the presence of *Eager*, or with his assent or knowledge. How many were taken by *James* privately, or by others, is unknown.

*Booth*, in reply. The defendants now say, what they should have alleged only at the time of the re-assumption. By the re-assumption, they adopted the receipt, which contains an acknowledgment of the property being in them. It is said the Sheriff could not deliver possession. But, on the 22*d*, the Sheriff was at the premises, and fully resumed his possession of all the property, except the three articles taken away by *James*. All the residue of the property was present. All opposition,

at length, ceased ; and all parties concurred in renewing the assumption. By this, the order to stay proceedings was waived ; and the property was left in the hands of the defendants.

Trover is the proper action. The safe keeping of the property, and having it in readiness for the Sheriff, was the only object. This object the defendants have altogether departed from and violated. They are not complained of for doing their duty negligently. They have violated their whole duty ; and the case is most palpably distinguishable from that of *Serjeant* v. *Blunt,* where the defendant had express authority to *sell.* The complaint was, " that he *sold* for a less sum, and thus violated his orders," as was observed by the Chief Justice. There was a permission to do the act. In the present case, if the defendants can be deemed, in judgment of law, to have acted at all, in parting with the possession of the property, their act must be considered tortious. " The defendants come with an ill grace, to turn the plaintiff round to another form of action, which may better accommodate their own views. It is a sound rule that no man shall found any claim or defence upon his own iniquity."(e) In *Syeds* v. *Hay,*(f) Ld. *Kenyon* says, " If no wharfage be due, of which there is not satisfactory evidence, I think this action may be maintained against the defendant."

(e) *Vid. Murray* v. *Burling,* 10 *John.* 176, *per Cur.*
(f) 4 T. R. 264.

*Bull* is chargeable with a conversion. The property, originally his, when levied on, was delivered into the joint possession of him and *Eager,* who received it as his friend. It was afterwards delivered by *Eager* to *James,* the attorney of *Bull,* doubtless with the consent of the latter. But this was not made a point at the trial. The attorney for *Bull* should have applied for his separate acquittal, when the plaintiff might have supplied the requisite proof of his agency, if any was necessary. The question reserved was the general one, whether trover would lie ? The defendants have joined in their plea, and " the Court cannot sever them, and say that one is guilty, and the other not, when they have put themselves on the same terms."(g)

(g) 1 *Ch. Pl.* 545. *Middleton* v. *Price,* 2 *Str.* 1184. *Moors* v. *Parker,* 3 *Mass. Rep.* 310.

The goods did not remain so far in the power of the plaintiff that his rights were not altered. In *Syeds* v. *Hay,*

*Buller, J.* says, "If one man, who is entrusted with the goods of another, put them into the hands of a third person, contrary to orders, it is a conversion." The property was taken with the assent of the defendants, and *Eager* was indemnified by *James.* They stop the sale, and the Sheriff must incur *the trouble and expense of re-possessing himself of the property, or institute a suit or suits at law : thus they bring a charge upon him.* " It is this charge which is to regulate the damages, but whether it be more or less, cannot vary the question as to the conversion. It is the breach of the trust, or the abuse of such lawful possession, which constitutes the conversion. Whether the party has to pay more or less, to get back his property, does not alter the principle."(h)

(h) *Per Thompson,* C. *J. in Murray* v. *Burling*, 10 *John.* 175-6.

The damages are not too high. It is plain, from the case, that the value of those goods only, taken by *James,* with the assent of *Eager,* were allowed by the jury. The verdict is one, by consent, for that amount, subject to the opinion of the Court on distinct questions.

WOODWORTH, J. The liability of the defendants, if any, arises under the second agreement to deliver the property levied on. That extends to such part as then remained in their possession.

It is contended that, as the Sheriff never re-possessed himself of the goods, he could not deliver them as the consideration for the last agreement.

When the plaintiff called the second time, the defendants must be considered as having the custody of all the goods, except a clock, bureau and table, which, the case states, were taken away from the premises by *James,* on the 20*th September.* The Sheriff made a levy previously ; they were legally in his possession ; he might have removed the goods, but did not. The consideration for the promise, is his suffering them to remain in the defendants' hands.

It is also urged, that the plaintiff has mistaken his action in bringing trover ; that assumpsit was the proper remedy.

That assumpsit may be maintained, I am not disposed to deny. If, however, the plaintiff can prove all that is neces-

ary to support trover, he may well adopt that form of ac-
tion. He had his election. Thus, where goods are deliv-
ered by way of pledge, after the payment of the money, or
a tender and refusal, the pawnor may either bring an action
of assumpsit, and declare that the defendant promised to
return the goods, upon request, or trover, the property being
vested in him by the tender. (*Yelverton*, 178. *Buller's
N. P.* 72.) So, also, where goods are delivered to a carrier,
the plaintiff may either bring trover, or an action on the
case, on the custom. If the former, he incurs this risk; that
the defendant may give in evidence, that the goods were
stolen; and, if he does, then he is guilty of no conversion,
though he would be liable in an action on the custom. (2
*Salk.* 655.) In the present case, by electing to bring trover,
the plaintiff must prove a conversion. If he had brought
assumpsit, it would be immaterial whether there was a con-
version or not. There is nothing in the case of *Serjeant
v. Blunt,* (16 *John.* 74) to support the objection. There
trover was brought for selling the plaintiff's goods at a less
price than that fixed on. The action failed, because the de-
fendant, having authority to sell, the selling was not a conver-
sion, but a breach of duty. It did not turn on the question,
whether the plaintiff could waive the assumpsit. The only
remaining enquiry then, is, whether the plaintiff has proved a
conversion against both the defendants? for, without this, the
verdict cannot be sustained. If a conversion is proved against
one only, the joinder of the other, in an action in form, *ex de-
licto,* is no objection; for one may be acquitted, and a ver-
dict taken against the other. (1 *Ch. Pl.* 74.) Such ought
to have been the finding here. If a conversion, by both, is
not proved, the verdict must be set aside, unless modified
by assent of parties. In *Nicol* v. *Glennie and others,* (1
*M. & S.* 588) a joint conversion against all not being proved,
it was held that the evidence did not warrant the finding,
and a new trial was granted.

With respect to *Eager;* there is proof of an actual con-
version; for the goods were taken by *James,* in his presence,
and with his assent. This was assuming the right to dispose
of the property, and exercising a dominion over it, to the ex-

clusion of the plaintiff's right. (*Bristol* v. *Burt*, 7 *Johns*
254.) Wherever a person, entrusted with the goods of an-
other, puts them into the hands of a third person, without
orders, it is a conversion. (*Syeds* v. *Hay*, 4 *D. & E.* 264.
1 *Ch. Pl.* 153.) It does not appear that *Bull* acted in con-
cert with his co-defendant, in delivering the property to
*James*, or that he had any knowledge of the fact. The de-
mand made by the plaintiff will not sustain the verdict.
The law is well settled, that where the defendant comes to
the possession of the chattel, in a lawful way, and an actual
conversion is not proved, evidence of a demand and refusal
is, generally, *prima facie*, evidence of a conversion. (3 *Bac.*
*Trover*, G. *Bull. N. P.* 4.) Had it not appeared that,
previous to the demand, the property was taken away, the
evidence would have been sufficient; it would, in that case,
be considered, that the property, being in possession of the
defendants, was unlawfully withheld. (6 *Bac.* 606, *Tro-*
*ver*, G.) A demand, and non-compliance, are, *prima facie*,
evidence of a conversion, and will induce a jury to find it,
unless the defendant adduce evidence to negative the pre-
sumption. (1 *Chitty*, 155. *Buller*, 44. *Peake*, 298. 2 *Saund.*
[47 *e*] *n.* 1.)

But it is competent for the defendants to give, in evidence,
every thing which tends to prove there was no conversion.
(6 *Bac.* 707. *Buller*, 48.) In this, I think, they have suc-
ceeded, so far as respects the defendant, *Bull*. It is not
shown that he ever exercised any control over the pro-
perty. It was left in his possession; and, for aught that ap-
pears, was taken without his knowledge or consent. The
law will not, without evidence, indulge a presumption that
he did an unlawful act.

Trover cannot be supported for a mere non-performance.
Where the goods are lost, by negligence, the remedy must
be case or assumpsit. (2 *Saund.* [47 *e*] *n.* 1. 1 *Ch. Pl.*
150.)

If it appear that the chattel was lost, by the defendant,
or that he was robbed before it was demanded, evidence of
a refusal is not evidence of a conversion. (6 *Bac.* 706.)

The property in question was left with the defendants, for safe keeping. In such case, it is held, they are not answerable to the person in whom the general property is, for the conversion by a stranger, unless the conversion be owing to some gross neglect. (2 *Lord Raym.* 913, 914, 915. 6 *Bac.* 686.)

Without, however, considering the extent of the liability, had the action been on the agreement to deliver, it is very clear that no conversion, by *Bull,* is proved. That being indispensable, in this form of action, to warrant the finding, the verdict must be set aside, and a new trial granted, with costs, to abide the event.

The objection to the amount of damages is not well founded. As I understand the case, the verdict is for the value of the goods taken by *James,* after the defendants became a second time responsible.

SUTHERLAND, J. The principal questions arising upon this case, are two. 1. Whether the undertaking of the defendants is one upon which they can be charged at all: and, 2. Whether, admitting them to be liable, the action should not have been *assumpsit,* instead of *trover.*

The case states that, on the 21st of *September,* three days after the first undertaking of the defendants had expired, the plaintiff, by his deputy, went to the house of *Bull,* where all the property in question was, (except a clock, a bureau, and a table, which had been taken away by *James*) for the purpose of recovering the articles which had been removed, and of taking them, together with the others, into his custody and possession; that the defendants, after conferring together, at length concluded to become responsible again, for the forthcoming of the property. The inventory and original receipt were then shewn to them; and *they agreed that said inventory and undertaking should remain as formerly, and that they would continue responsible:* In consideration whereof, the plaintiff went away and left the property. All the articles upon the inventory, except those which had been taken by *James,* were then in the house and on the premises of *Bull,* in the presence and within the reach of

the parties, at the time of the arrangement. They were not only in construction of law, but in fact, in the possession of the plaintiff. He had a legal right to protect that possession by force, or to remove the articles to any other place. Being thus in possession, and having such rights, and intending to exercise them, the defendants, in consideration of being permitted to have the possession and use of the property, undertook to be responsible for its forthcoming, on demand. No formal delivery of possession was necessary, from the plaintiff to the defendants. The property was before them, under their control, and so left by the plaintiff. This was a sufficient delivery. The possession of the property was a valuable and sufficient consideration, to support the promise of the defendants.

The promise not being in writing, forms no ground of objection to it. The statute of frauds has no application to the case. The defendants, therefore, are clearly responsible for the property.

2. Trover will well lie for its non-delivery. It is not questioned, that a Sheriff, after having levied upon goods and chattels, by virtue of a *fi. fa.* has a sufficient property in them to enable him to maintain trespass, or trover, against any person who takes them away and converts them. (2 *Saund*, [47 *a*] n. 1. *Barker & Knapp v. Miller*, 6 *John.*, *Rep.* 195. *Hotchkiss v. M'Vickar*, 12 *John.* 403.)

The evidence of the conversion, by the defendants, as stated in the case, is conclusive. The plaintiff went to the house of *Bull*, to sell the property : he sold all he could find, and then presented the inventory and receipt to the defendants, and demanded the residue, which was not delivered. This demand and refusal were all that it was necessary for the plaintiff to show, in order to prove the conversion by the defendants.(*i*) What had become of the goods ; whether they had been lost, or sold, or secreted by the defendants, was a matter concerning which he was not bound to inquire. Nor was it his duty to pursue and take them from the possession of *James*. Admitting he had a right to do so, he had his election, either to do that, or resort to the

(*i*) *L Place*
*v. Au Poix*, 1
*John. Cas.*
406. *Durell* v.
*Mosher*, 8
*John. Rep.*
445. *Murray*
*v. Burling*, 10
*John.* 172.

defendants. He determined that election, by bringing this action. A case in which the action of trover is more peculiarly proper, can hardly be imagined.

The evidence of a conversion is sufficient, against both defendants. The goods were left upon the premises of *Bull*, in his immediate care. It is difficult to perceive how they could have been removed in the manner stated by the case, without his consent, connivance, or gross neglect. It is not enough, that there is no evidence of his agency in their removal. The demand and refusal are admitted to be, *prima facie*, evidence of a conversion, in *Bull* as well as *Eager*. Thus a case is made out against *Bull*. This is not repelled by the mere circumstance, that the goods were taken away by another, without its appearing that the removal was accompanied with such force or fraud as did not leave the goods perfectly within *Bull's* control. He gave no explanation at the time of the demand. He made no effort, nor even expressed a wish to see them restored, although they are admitted, by the case, to have been perfectly accessible. These circumstances, and the relation in which he stood, both to *Eager* and *James*, render it difficult to resist the conclusion, that he participated in their acts. To my mind, so far from affording a satisfactory reason for *Bull's* refusing to deliver the goods, their removal, connected with other facts appearing in the case, tend rather to prove an *actual* conversion by both defendants. I am, accordingly, of opinion, that the plaintiff is entitled to a judgment upon the verdict.

SAVAGE, Ch. J. To maintain trover, the plaintiff must shew property in himself, general or special ; and a conversion by the defendant. The special property acquired by the levy, is sufficient to maintain the action ; and the demand and refusal are, *prima facie*, evidence of a conversion. They are, however, but *prima facie* evidence, and it is contended, that from the whole case, no conversion appears. The plaintiff, being lawfully possessed of the property, on the 9th of *September*, delivered it to the defendants, to be re-

delivered on demand. On the 18*th*, the plaintiff's deputy demanded the property ; and it was virtually returned to him. On the 20*th*, it became again the subject of negotiation ; and the defendants renewed their former contract and liability. *James* was permitted to take away the articles in question, on a claim of title in himself, and *Eager* received an indemnification from *James*, for this breach of trust. " It is the breach of trust, or the abuse of such lawful possession, which constitutes the conversion."(*j*) Again, " if one man who is entrusted with the goods of another, put them into the hands of a third person, contrary to orders, it is a conversion."(*k*) Indeed, in the case last cited, the Court sustained the action, where the defendant, being entrusted with the goods, delivered them to a wharfinger *for the plaintiff's use.* Here the case is stronger. *James* is permitted to take the goods, with the avowed intention of *defeating the plaintiff's claim.* It is no answer, in a case of bailment, to say that the plaintiff has his remedy on the agreement, or that he might have gone and retaken the goods. He may also have trover. Bailment presents a familiar instance of the election of remedies.(*l*)

It is contended, that this case is not distinguishable from *Serjeant* v. *Blunt.*(*m*) That was trover, for selling a chronometer at the price of 300 dollars, whereas the defendant was expressly instructed not to sell for less than 500 dollars. In that case, the defendant had an authority to dispose of the article in question. Not so here : The express contract of the defendants was, *to deliver the goods to the plaintiff,* or one of his deputies. It is evident, from the reasoning of the Chief Justice, in *Sarjeant* v. *Blunt,* that, had the defendant sold without any authority to sell, trover would have been the proper action. He virtually admits, that if the selling had been tortious, trover would have lain against the purchaser ; but the selling was not tortious : And why was it not ? Because the defendant had authority to sell. How was it in this case ? The defendants had no authority to deliver the goods to any one but the plaintiff. There can be no doubt that the act was tortious ; and that an action might have been sustained against *James.*

(*j*) 10 *John.* 175.

(*k*) *Syeds* v. *Hay,* 4 *T. R.* 264.

(*l*) 10 *John.* 176. *Vid. also Gavett* v. *Radnidge et al.* 3 *East,* 62, 70. 2 *Ch. Pl.* 270-1, p. (2) 1 *id.* 117, *n.* (*d*)

(*m*) 16 *John.* 74.

I am accordingly of opinion, that the form of action is right ; and that a conversion is proved as to *Eager.* But I concur in the opinion, that a conversion is not proved against *Bull ;* and a new trial must, for that reason, be granted.