## John Woodbury v. Peter Woodbury.

B. and C. gave their note to A. for land which A. conveyed to both jointly. It was afterwards agreed that C. should convey his interest in the land to B., and that B. should pay the whole note to A., and that C. should be discharged from paying any part of the note. A. consented to this and C. conveyed the land to B. accordingly. A. can recover the whole amount of the note against B. in an action for money had and received.

One B. W. sold and delivered to the plaintiff a promissory note payable to said B. W. or order. Plaintiff, in the presence, at the request, and by the direction, of said B. W., endorsed the name of said B. W. upon the back of said note for the purpose of transferring the legal title in the note to the plaintiff. Plaintiff then brought suit in his own name against the signer of the note. *Held* that the suit might be maintained; that, there being no question raised as to the good faith of the transaction, the endorsement was well enough.

A. died leaving B. his executor and also his residuary legatee. B. accepted the trust as executor, and gave bond as required by law, and took possession of all the property of A., amongst which was a note against the defendant payable to A. or order and not endorsed. B. sued this note in his own name, but not as executor. *Held* that he could not recover.

Where a defendant has been defaulted and a subsequent attaching creditor appears by leave of court, to defend, such creditor may in some instances be allowed a claim of the defendant against the plaintiff, in offset to the plaintiff's claim.

Where goods are wrongfully taken or detained, the former owner cannot waive the tort and maintain assumpsit for the value of the goods.

But when the goods have been sold and converted into money, assumpsit for money had and received may be maintained to recover the money.

In this State where a person under a contract to purchase, enters upon land with the consent of the vendor, and the contract of purchase and sale is not carried out, because the purchaser fails or refuses to pay as he agreed, the vendor may treat him as a trespasser or as a tenant at will, at his election, and may maintain either trespass or assumpsit for use and occupation.

WRIT dated August 13, 1860. The declaration is as follows:

"In a plea of the case for that the plaintiff on a certain day, to wit, on the twenty-seventh day of January, A. D. 1851, duly conveyed to said Peter Woodbury and one Elias H. Woodbury certain parcels of land situate in the aforesaid Wilmot, and in part consideration thereof the said Elias H. and Peter Woodbury, by their promissory note, dated January 27, 1851, promised to pay said plaintiff or order, two hundred and seventy-five dollars, on demand, with interest; and thereafterwards, to wit, in 1855, said plaintiff, Elias H. Woodbury and Peter Woodbury, did agree that said Elias H. Woodbury should convey to said Peter Woodbury his right, title and interest to the premises aforesaid; that said plaintiff should discharge and release from all liability on said note the said Elias H. Woodbury, and should take the said Peter Woodbury paymaster therefor. And the said Peter Woodbury, in consideration thereof, promised to pay the plaintiff the amount due upon the aforesaid note; and the plaintiff avers that the said Elias H. Woodbury did duly so convey his right, title and interest in the aforesaid premises; that said plaintiff did discharge and release said Elias H. Woodbury from all liability on said note, and did agree to take said Peter Woodbury paymaster therefor, as aforesaid; that said defendant

did promise to pay said note as aforesaid; yet, though often requested, has never paid the same, but neglects and refuses so to do.

There was also a count for money had and received.

Under these counts the plaintiff specified three notes as follows:

1. Note for $275.00, dated January 27, 1851, payable to plaintiff or order, on demand, with interest, and signed by Elias H. Woodbury and Peter Woodbury.

2. Note for $23.00, dated April 21, 1856, payable to Betsey Wells or order, on demand, with interest, and purporting to be endorsed in blank by said Betsey Wells.

3. Note for $54.00, dated April 21, 1856, payable to Anna Wells or order, on demand, with interest, on which was endorsed, $5.00 April 5, 1857, $5.00 March 5, 1858, and $10.00 August 20, 1858.

Defendant was defaulted, but one Webster, a subsequent attaching creditor, obtained leave to appear, and pleaded the general issue, and the statute of limitations, with an offset, which was for the rent of a certain house and piece of land in Wilmot, for six years prior to date of writ, at $40.00 per year, $240.00.

The action was tried by the court and the following facts found:

The evidence sustains all the allegations in the first count in relation to the $275.00 note. Subsequently, on the 14th day of March, 1856, this note was all paid but the sum of $200.00, which sum, with interest from that date, is to be allowed on that note if anything.

I find that the note for $23.00 was sold and delivered by Betsey Wells to the plaintiff, and that he, in the presence, at the request and by the direction of said Betsey, endorsed the name of said Betsey on the back thereof, for the purpose of transferring the note to the plaintiff, all which was done before the date of the plaintiff's writ. No part of said note has ever been paid.

The note for $54.00 was the property of Anna Wells. At the time of her decease, in 1859, she left a will, which was duly proved, approved and allowed August 23, 1859. This note was not specifically bequeathed. By the will, the plaintiff was made sole executor and residuary legatee, and he had accepted the trust as executor, and given bond according to law, and had taken possession of this note, with the other personal property, as executor, before the date of the plaintiff's writ.

As bearing upon the defendant's offset, and the $275.00 note, the following facts are found: On the 14th day of March, 1856, the plaintiff had occupied a house and out-buildings with a small lot of land belonging to the defendant for some years, and the rent for the use of the same was tendered and adjusted up to that date. At that time the plaintiff and defendant made a bargain, by which plaintiff was to purchase said house and land of the defendant, was to give up the balance then due on said $275.00 (being $200.00,) and pay the defendant $200.00 more for said premises, they being then of the value of $400.00, and the defendant was to deed said premises to the plaintiff. No part of this contract was ever put in writing. No deed of said premises has

ever been executed by defendant to the plaintiff, and nothing has ever been paid for the same by plaintiff.

The plaintiff and defendant were brothers and were both willing at any time to perform their part of the agreement, and neither was in fault more than the other. It was postponed to a more convenient season, until about 1859, when defendant went to California and has never returned.

In 1860 it was ascertained that he was insolvent, and his creditors sued and attached the premises in question as his property. The plaintiff being in possession of the premises at the time the contract was made, remained there under this contract to purchase and has so remained ever since. If under these circumstances, the defendant can recover anything on his offset, the court found that he was entitled to recover $120.00, at date of writ, with interest since that time, that being the amount that had accrued in rent and interest upon rent due, up to that time, after deducting what the plaintiff has paid for taxes, insurance and repairs during the same time.

And it was agreed by the parties that such judgment should be rendered, and for such sum as the court should order upon the facts so found.

And the questions of law thus arising were reserved and assigned to the law term.

*Shirley*, for the plaintiff.

I. The case, as amended, finds that the $23 note, "before the date of the plaintiff's writ," was "sold and delivered" to the plaintiff.

1. These terms imply a valuable consideration which was fully shown on trial. If, then, the note was *properly endorsed*, the plaintiff's right to recover under the count for money had and received, is *clear*. Parsons on Notes, vol. 2, page 438 ; *Martin* v. *Farnum*, 24 N. H. 195.

2. The case finds that this note, at the same time, "was delivered by (the payee) Betsey Wells, to the plaintiff, and that he, in the presence, at the request, and by the direction of the said Betsey, endorsed the name of said Betsey upon the back thereof for the purpose of transferring the note to the plaintiff."

Whoever does an act by another does it himself. It is clear upon principle and conclusively settled by authority, (if it is possible to settle anything) that this was the "personal act" of Betsey Wells, as much as if she had set her name thereon with her own hand. *Ball* v. *Dunsterville*, 4 Term Reps. 314 ; *The People* v. *Smith*, 20 Johns. 62 ; *Pequawkett Bridge* v. *Mathes*, 10 N. H. 232 ; *Kidder* v. *Prescott*, 24 N. H. 267 ; *Hanson* v. *Rowe*, 26 N. H. 329.

II. The $275 note (fully proved) can be recovered under the same count, *so far* as not *reduced* by subsequent payments, or settlements and agreements based upon a valid consideration.

1. Because the fact that Elias H., one of the signers, was not joined, is, under the general issue, *no variance and no defence*. *Scott* v.

*Goodwin,* 1. Bos. & Pull. 73, note a; *Converse* v. *Symmes,* 10 Mass. 379; *Merrill* v. *Coggill,* 12 N. H. 105; *Boody* v. *Davis,* 20 N. H. 149; *Burt* v. *Stevens,* 22 N. H. 233; *Gove* v. *Lawrence,* 24 N. H. 130; *Curtis* v. *Baldwin,* 42 N. H. 402, 403.

2. On March 14, 1856, a "jump and settlement" was had. As the case finds "the balance then due on said $275 note, (being $200.)" This was stating an account; *Knowles* v. *Michel,* 13 East. 249; and an admission that the note was a *valid* and *living one* to that extent; both of which "will support a count for money had and received." *Filer* v. *Peebles,* 8 N. H. 229–231; *Matthewson* v. *Powder Works,* 44 N. H. 291. Opinion in this case by Bell, C. J., December Term, 1863–4.

3. The agreement between these three parties by which plaintiff discharged Elias H. from *all* liability on the $275 note and took Peter *alone* paymaster thereon, was a "novation." American Cyclopedia, vol. 12, page 428; *Tatlock* v. *Harris,* 3 Durn. & East. 180; *Heaton* v. *Angier,* 7 N. H. 397; *Butterfield* v. *Hartshorn,* 7 N. H. 347; *Hutchins* v. *Gilman,* 9 N. H. 363; *King* v. *Hutchins,* 28 N. H. 580; *Head* v. *Richardson,* 16 N. H. 454; *Warren* v. *Batchelder,* 16 N. H. 580.

4. And the plaintiff may recover on it "in an action for money had and received." *King* v. *Hutchins,* 28 N. H. 580; *Warren* v. *Batchelder,* 16 N. H. 580–588. Bell, C. J., in this case, December Term, 1863–4.

5. And because defendant having had the land of Elias H. upon the promise and discharge proved, it, or its value, is to be treated as money of the plaintiff in his hands. "It is sufficient to sustain the action that something has been received by the defendant, which, under the circumstances of the case, ought, as between the parties, to be regarded as money." *Matthewson* v. *Powder Works,* 44 N. H. 291-2. And also "on the ground that defendant was the *original promisor* of the note described in the amendment, which would be evidence under the count for money had and received. If the defendant then claimed that by the agreement Elias H. Woodbury had been released, the same evidence would show that Peter was still chargeable for the *whole.*" Bell, C. J., in this case, December Term, 1863-4.

III. It is clear, then, that on March 14, 1856, the plaintiff had a perfect right of action on this note for $200. Has he since lost it—if so, when and how?

1. There is no pretence that the note has been paid up.

2. The date of this note, (Jan. 27, 1851,) the date when, (as the case finds) "this note was all paid but the sum of $200," (March 14, 1856,) the time when Peter left for California, the date of the writ, ·(August 13, 1860,) aside from other evidence at the trial, shows that the statute of limitations set up here is a *sham plea* and no bar. *Jones* v. *Jones,* 21 N. H. 219; *Brown* v. *Rollins,* 44 N. H. 446.

3. There has been no accord and satisfaction.

IV. Can plaintiff recover, in his *own name*, on the $54 note, payable to his testate, or order, it not being specifically bequeathed, and *having with all the other* property been taken into plaintiff's possession, *as his own,* he being *sole* executor, residuary legatee and having *fully* complied with chapter 167, C. S., sec. 13 ?

1. The honesty and justice of the claim is beyond doubt. Had the note been payable to bearer, or had it been endorsed by plaintiff to himself, it is conceded he could recover on it in this suit. For the only *pretence* of a *defence,* is that formally, technically, he did not sue as John Woodbury, Jr., Ex'r, but as plain John Woodbury, Jr. Upon grounds of public policy, (to repress litigation and stop maintenance) choses in action were originally held non-assignable. Buller, J., in *Master* v. *Miller,* 4 D. & E. 340, 341. This rule was first applied to transfers of "right or title" to realty. "The rigid rules of the common law upon this subject have been *constantly* relaxing. The law allowing the assignment of property in the form of notes, bills, &c., and choses in action, has been progressive."—(Nesmith, J., in *Jordan* v. *Gillin,* 44 N. H. 427,)—till the substance of the rule is gone—the formal shadow alone is left and not even that in many States.

2. *Divoll* v. *Tulatt,* 1 Dane's Abridgment, sec. 2, p. 574; *Clarke* v. *Tufts,* 5 Pick. 340, 341; *Tarbell* v. *Whiting,* 5 N. H. 63; *Robinson* v. *Leavitt,* 7 N. H. 84, 85; *Batchelder* v. *Russell,* 10 N. H. 37; *Tappan* v. *Tappan,* 30 N. H. 68, have settled that these proceedings under the statute cited, "changed the property;" that "the estate and the testator's cattle, &c., had become his, and so the property was changed;" that the "effect" "of the" "statute" "is to vest in (them) an absolute and indefeasible title to the estate devised and to give them full authority *to sell and convey* the same without any order or licenses of any court," and that "the title is complete and perfect."

*Tucker* v. *Gordon,* 5 N. H. 565; *Burrough* v. *Moss,* 10 B. & C. 558; *M'Neilage* v. *Holloway,* 1 B. & A. 218; *Kimball* v. *Jackman,* 42 N. H. 242; *Whittier* v. *Whittier,* 31 N. H. 458 to 465; and *Roberts* v. *Place,* 18 N. H. 183, are all cases *where the right of one person to sue* is by *operation of law vested as completely in another.*

V. The plaintiff made a *general* attachment of Peter's lands, &c., in Wilmot. F. B. Webster, Ex'r, claims that he has since attached the premises on which plaintiff now lives, and that thereby he can set off against the *just* demands of the plaintiff the rent of said premises as a defence.

Our answer is :

1. By our practice a subsequent attaching creditor (of the *same* premises) may appear *not* for *all* purposes, but to defeat an attachment (1) on notes and demands given for a *full* consideration, if done "to hinder, delay or defraud creditors." *Robinson* v. *Holt,* 39 N. H. 561. (2.) If the demands were without consideration and "fraudulent," (*Pike* v. *Pike,* 24 N. H. 385,) or if plaintiff had no. right to sue defendant or his trustee, (*Blaisdell* v. *Ladd,* 14 N.. H. 130,) and this because the claims being "collusive and fraudulent," the attachment never had any

honest foundation on which to rest, and was, therefore, invalid in law. See cases cited, and *Buckman* v. *Buckman*, 4 N. H. 320; *Webster* v. *Harper*, 7 N. H. 598. The last clause in the bond of Webster is to dispute "the validity and effect of the (prior) attachment." But the practice does not make him an administrator on the estate of plaintiff and defendant, nor, *because* of his attachment and admission, give him power to bring and prosecute suits against plaintiff in name of defendant, and therefore not to bring and maintain the suit called set-off. There is not a reported case in this State in which it has been done or attempted. *If* the defendant had a right of action against plaintiff for rent, that would have no tendency to show that the suit is "collusive" or attachment "fraudulent." So a set-off, being a cross-suit, is no "defence" to plaintiff's claims, and has no tendency to show that they were unfounded or that the attachment was a fraud.

2. If otherwise, the general charge for rent has not the "certainty"— is not the "particular statement" required by the statute.

3. The case finds that the plaintiff has remained in possession "under the contract to purchase," since March 14, 1856. His remaining in under it, is precisely the same as if he originally went in under the purchase contract, and there remained under it. The plaintiff has *either* in some way *broken* the contract or he has *not*.

If the plaintiff "refused" or "neglects to perform his part of the contract"—"to purchase"—the books are agreed that he is a trespasser *ab initio*. *Vandeuvel* v. *Storrs*, 3 Conn. 203; *Smith* v. *Stewart*, 6 Johns. 46; *Bancroft* v. *Wardell*, 13 Johns. 489; *Clough* v. *Horsford*, 6 N. H. 233; *Lyford* v. *Putnam*, 35 N. H. 566, 567.

4. Upon principle a trespass *ab initio* is *not* a *contract*, and if any *distinction* exists betwixt *different* forms of action, the *same* facts which prove the former cannot support the latter.

Therefore assumpsit in the nature of use and occupation (which this set-off is) will not lie in such case.

True, there *were* some cases to the contrary. *Hill* v. *Davis*, 3 N. H. 384, 386, and a *dictum* of Upham, J., in *Clough* v. *Horsford*. The last case was trespass q. c. The court below had in substance instructed the jury, that if the defendant entered under the contract to purchase, "and afterwards refused to buy the land," he was a trespasser *ab initio*; "but if he entered under an agreement to pay rent, then trespass could not be maintained." On verdict for plaintiff, the court above affirmed these rulings. Upham, J., commences his opinion by stating that "the only question raised in this case is whether trespass can be maintained." If he stated the truth (and it is apparent that no other question *could* have been before the court) all his loose talk that "use and occupation" might lie, was a stump-speech *outside* of the case.

These cases are as the cases state, bottomed on nothing but the doctrine that a plaintiff "may waive the tort" "and bring his action of contract."

*Mann* v. *Locke*, 11 N. H. 248—by Upham, J.; *Page* v. *Babbitt*, 21 N. H. 38; *Smith* v. *Smith*, 43 N. H. 538, 539, have taken the bottom out of both cases by limiting such tort-waiver to an an action

for money had and received when the trespasser had sold the goods and received the money therefor.

As trespass is not a contract and nothing can be set-off, which could not be recovered by Peter in a suit on contract, both principle and great weight of authority settle, "that when a purchaser who has been in possession under a contract to purchase refuses or 'neglects,' (35 N. H. 567,) to perform on his part, the owner's remedy is not in assumpsit but trespass." Vol. 1 Washburn on Real Prop., p. 378, and notes.

5. This examination has shown that if the non-completion of the purchase contract had been owing to the "refusal" or "neglect" of plaintiff, neither Peter nor those who *claim* to stand in his shoes can maintain the set-off, but must sue in trespass.

If the non-performance was owing to the "refusal" or "neglect" of Peter, we shall see that neither he nor Webster can either maintain the set-off or any other action.

"The action (use and occupation) lies *only* when the relation of landlord and tenant subsists between the parties, founded on an agreement express or implied, but no such implication can arise if there was no tenancy in *contemplation between them.*" Taylor's Landlord and Tenant, sec. 636.

"If, for instance, a purchaser enters under a parol contract of purchase and sale, and the contract fails by the fault of the vendor, he would not be liable to pay for the use and occupation of the premises in the absence of an express agreement to that effect." 1 Vol. Washburn R. P., p. 377, sec. 29.

6. "If neither party has been in fault," (or what is the same thing, if both parties from the beginning have been equally in fault,) "assumpsit for rent clearly would not lie while the contract of sale continued open and undetermined." 1 Vol. Washburn R. P., p. 378, sec. 39, notes.

*Flanders,* for Webster.

Sargent, J. At the trial the court found that $200 was the amount due upon the $275 note if anything could properly be recovered. Can anything be recovered upon it? The contract was clearly executory. Plaintiff was to purchase the premises, and was to pay for the same as agreed, and defendant was to convey. It was all to be done in the future. The note was not paid by that arrangement, but was to be paid in a certain way, but never was. The note was not paid, and has not been since.

No question arises here whether there has been such part performance of the contract, by the plaintiff's having possession of the premises, as that the whole contract would be specifically enforced in equity. No one here is seeking for a specific performance. The plaintiff, by bringing his suit to recover pay on the note, has elected on his part to rescind and repudiate this contract, and the creditor who appears to defend, instead of relying upon the contract and seeking to enforce it, is claiming rent for the use and occupation of the premises since the con-

tract of sale, which he could only do on the ground that the contract of sale has been rescinded.

Two hundred dollars of the note therefore remains unpaid. That amount may be recovered here under the arrangement and contract set up in the special count, and all this evidence would also be admissible under the count for money had and received, upon the authority of *Warren* v. *Batchelder,* 16 N. H. 580; *Matthewson* v. *Powder Works,* 44 N. H. 292; *Kent* v. *Watson,* 46 N. H. 148, and cases there cited.

The plaintiff may therefore recover $200 on this note, unless the statute of limitations which is pleaded in this case shall be found to interfere. The note was dated January 27, 1851, and had not run six years at the time of the arrangement of March 14, 1856, when the case finds that there remained due on the same $200, and also that Peter was by his contract to receive it in payment of $200, or instead of that amount of cash towards the land, which we think would be competent as tending to show an acknowledgment on the part of Peter that there was then that amount honestly due which he was liable and willing to pay, and in fact promised to pay in a particular way by conveying the land, but that contract he has not performed. He has not paid the note in that way as he agreed to do, and the fact that that contract is now rescinded by which it was to be paid in a particular way, does not nullify the effect of his admission, which is fairly deducible from his conduct, that there was then $200 due which he was liable and willing to pay, and this would be a sufficient acknowledgment to take the case out of the statute of limitations, and prevent that from operating as a bar for six years from that time. In 1859 the defendant went to California and has never returned, and this writ is dated August 13, 1860.

We think the plaintiff may also recover upon the $23 note, although the endorsement of the payee's name on the back of the note was written by the plaintiff, the endorsee. The case finds that this note was actually sold by Betsey Wells to this plaintiff, and that he endorsed her name on the back of the same in the presence, at the request and by the direction of said Betsey, for the purpose of transferring the note to the plaintiff, and that she delivered the note to him for the same purpose. No question is here raised about the good faith of the transaction. It was her own act, if done in her presence and by her direction, though done by another, as much as though she had written her name herself. *Kidder* v. *Prescott,* 24 N. H. 267; *Hanson* v. *Rowe,* 26 N. H. 327; *Cushman* v. *Woorster,* 45 N. H. 410.

The $54 note cannot be recovered in this suit. It is payable to Anna Wells or order, and not endorsed by her in her life time nor by her executor or legal representative since her decease, and as it could only be recovered in her name while she lived, so since her death it can only be recovered in the name of her executor, no matter in whom the equitable title to it may be. John Woodbury, jr., is not the representative of Anna Wells, though John Woodbury, jr., executor of the last will, &c., of Anna Wells, may be her legal representative, and as such he might have recovered on this note, or as such he might have endorsed

the note so that John Woodbury, jr., might have recovered upon it in his private capacity. But until there is such endorsement the note cannot be recovered in a suit at law in the name of any other person than that of the executor, suing in his official capacity. *Currier* v. *Hodgdon*, 3 N. H. 82; *Thompson* v. *Emery*, 27 N. H. 269; 1 Parsons on Bills, 159; *Clark* v. *Sigourney*, 17 Conn. 510; *Dix* v. *Cobb*, 4 Mass. 511; *Crocker* v. *Whitney*, 10 Mass. 316; *Wheeler* v. *Wheeler*, 9 Cow. 34; Story on Prom. Notes, sec. 120; *Amherst Academy* v. *Cowls*, 7 Pick. 427-439; *Grover* v. *Grover*, 24 Pick. 261; *Bates* v. *Kempton*, 7 Gray 382; *Smalley* v. *Wight*, 44 Maine 442; *Rawlinson* v. *Stone*, 3 Wils. 1; *Rood* v. *Hubbard*, 4 Met. 252.

Can the off-set be recovered in this suit? If this were the case of an ordinary off-set of a matter of account in a case where there were other dealings between the parties, not involved in this suit, it might be doubtful whether the subsequent attaching creditor in this suit could file this off-set and insist upon its allowance in this particular case. The defendant might prefer to have the off-set allowed on some other claim of the plaintiff's besides the one in this suit, or it may have been arranged that the off-set should apply on some other claim, in which case the subsequent attaching creditor would have no right to control it or to divert its application from the particular manner intended or agreed on by the parties of record. But in this case the nature of the transaction and the character of the off-set would seem to indicate that it should be applied in this particular way.

The party rescinding a contract, if he has received any benefit from it, should restore or make compensation for the benefit received so as to put the other party in as good condition as before. And as plaintiff elects to rescind the contract in this case, and as he has occupied the premises under the contract, it is proper that the compensation for the use of the premises, if it is to be allowed at all, should be allowed in this suit which depends so much upon that contract and its rescission. And then again, the case finds that all other dealings between these parties were settled except what related to and were connected with the contract for the purchase of this land, so that there is no other claim on which either the plaintiff or defendant can desire to make the application of this off-set, if allowed at all, except the one in this suit. Under all these circumstances we see no reason why this creditor, who has obtained leave to appear and defend this suit, may not insist on having this off-set applied in this case, if it can be allowed at all, any more than that he should not be allowed to insist on a payment, by defendant made subsequent to the contract, which he clearly might do.

The question then arises whether a claim for use and occupation can properly be made in this case for the use of the premises since the contract to purchase was made? Upon the authority of *Clough* v. *Hosford*, 6 N. H. 233, such claim may clearly be maintained. This case finds that neither party is in fault more than the other, that plaintiff and defendant were brothers, and were both willing to perform their part of the contract at any time, but both procrastinated an unreasonable time until either might properly have rescinded the contract; but the fact

that the defendant was in debt made it necessary for the plaintiff to rescind it in order to save either the land or his money, and he has elected to rescind, and attached the land as the defendant's, and there is nothing inequitable in holding that he should allow what the use and occupation of the premises was reasonably worth to him. If it had been the defendant's sole fault that the contract was not carried out, he could have no claim for the rent. But the plaintiff having taken the initiative and rescinded the contract, he is liable properly either for the use and occupation or as a trespasser.

Plaintiff claims that he can only be liable as a trespasser, and that the case of *Clough* v. *Hosford* has been overruled by *Paige* v. *Babbitt*, 21 N. H. 38, and *Smith* v. *Smith*, 43 N. H. 538. But we do not understand the effect of these cases to be what the plaintiff claims.

In this case the defendant is not complaining that the plaintiff has not paid sooner, nor is he here seeking to enforce the contract for the sale of the land. The plaintiff has found it necessary to rescind the contract or lose his note and the land also. And when he elected to rescind, he must restore what he has received under the contract, or pay its value as a pre-requisite condition. Defendant does not object to this, and only asks that plaintiff pay what is reasonable for the use of the premises while he has occupied them under the contract. Of this the plaintiff cannot reasonably complain.

But there is another ground on which a distinction might be made between this case and *Clough* v. *Hosford*, if it were necessary, which is that the plaintiff, as the case finds, was, at the time of the contract of purchase and of sale, and had been for several years before, in possession of the same premises under a contract to pay rent, which rent was adjusted in the settlement of March 14, 1856. Of course, there was no original entry upon the premises under the contract to purchase, for the plaintiff was already in possession under a different contract. And even though it should be held, where a person is permitted to enter upon land under a contract to purchase which he himself avoids by refusing to pay, that he is in without right and as a trespasser—just as though he had entered without any contract or any permission; yet here, where the contract of sale is avoided, the plaintiff would be left in possession—just as though no such contract of sale had been made; and in this case that would leave the plaintiff in possession of the premises under the contract to pay rent as before. And then the claim for use and occupation or for rent would be the proper form of remedy. But we do not think it necessary to put this case upon that ground.

We are aware that there is a great weight of authority that an action of trespass, and not assumpsit, for use and occupation, can be maintained where an individual enters upon land under a contract to purchase and then fails to pay and refuses to perform the contract, and the other party is without fault. In such case he may no doubt be properly held to be a trespasser and guilty of bad faith as well as trespass. *Smith* v. *Stewart*, 6 Johns. 46 ; *Bancroft* v. *Wardwell*, 13 Johns. 489 ; *Abel* v. *Radcliff*, 15 Johns. 508 ; *Hall* v. *Southmayd*, 15 Barb. S. C. R. 36 ; *Little* v. *Libbey*, 2 Greenl. 242 ; *Wyman* v.

*Hook,* 2 Greenl. 337 ; *Keyes* v. *Hill,* 30 Vt. 762 ; *Stacy* v. *Railroad,* 32 Vt. 551 ; *Sylvester* v. *Ralston,* 31 Barb. S. C. R. 286, are some of the authorities that hold that trespass and not assumpsit for use and occupation is the proper remedy in such a case.

The cases in New York are the leading cases, where the common law remedy of ejectment and trespass for mesne profits was adopted with the English statutes upon that subject, and where these remedies were in common use. Now where ejectment is the remedy used to recover possession of lands occupied by another, it follows that trespass must be brought to recover the mesne profits. In ejectment the plaintiff's title has relation back to the time when his right of entry first accrued, and he is considered for all purposes of the recovery, to have been in possession from that time. The possession of any one who holds him out during that time is consequently wrongful, and by the common law he may bring an action of trespass to recover damages for the mesne profits. But use and occupation will not lie for rents and profits after an ejectment, accruing subsequent to the day of the demise alleged in the declaration, as use and occupation imply a contract, and the plaintiff having in the ejectment treated the defendant as a trespasser at a period subsequent to the demise is estopped from also treating him as a tenant and bringing an action for use and occupation, the one position being manifestly inconsistent with the other. Taylor's Land. and Ten. sec. 710.

But it is held in Massachusetts that assumpsit for use and occupation will lie where the purchaser had entered upon land under a parol contract of sale, which had failed, and that when there has been such entry and occupation by the purchaser who has failed to complete the purchase, such possession constituted a tenancy at will, and assumpsit will lie. *Codman* v. *Jenkins,* 14 Mass. 93. *Gould* v. *Thompson,* 4 Met. 224, is a leading case which was fully discussed and considered, and where the New York cases and others of the same import were cited in argument, but it was held, *Shaw, C. J.,* delivering the opinion of the court, that where one enters on land to use and occupy it, with the consent and permission of the owner, but for no definite time, he is tenant at will ; that in the case at bar the possession was given with the expectation that a deed would be given, but it was uncertain when it would be given or whether it would be given at all ; that none in fact was given, or could be in that case, and that the purchaser was in the meantime tenant at will of the owner. There are various other authorities sustaining this view of the subject. *Hall* v. *Vaughan,* 6 Price 157 ; *Boston* v. *Binney,* 11 Pick. 1 ; 2 Bouv. Inst. sec. 1810 ; *Doe* v. *Jackson,* 1 Barn. & Cres. 455 ; *Right* v. *Beard,* 13 East. 210 ; 4 Kent's Com. 114 ; *Doe* v. *Miller,* 5 Car. & P. 595 ; *Keay* v. *Goodwin,* 16 Mass. 4 ; *Theological Institute* v. *Barber,* 4 Gray 329 ; *Foley* v. *Wyeth,* 2 Allen 131 ; *Lyford* v. *Putnam,* 35 N. H. 563 ; *Wendell* v. *Johnson,* 8 N. H. 220 ; *Proprietors, & c.* v. *McFarland,* 12 Mass. 324 ; Taylor's Land. and Ten. secs. 57, 60 and 63.

In *Clough* v. *Hosford, supra,* it is said that a person entering on land on a contract to purchase, and afterwards refusing to comply with

his agreement may be prosecuted in an action of trespass, or assumpsit for use and occupation, at the owner's election.   In this statement of the general principle, we fully concur, but not precisely upon the grounds stated in the opinion in that case, viz., that trespass would lie and that the plaintiff might waive the tort and bring assumpsit in such a case where the defendant had had the use or avails of the  plaintiff's proper- ty.   This waiving of a tort and bringing assumpsit was  formerly held to be good law, but the more recent decisions are the other way, in which it is held that the extent of this doctrine is that where the wrong doer has sold the property unlawfully taken or detained and received the money for it, the owner may waive the tort and ratify the sale and maintain assumpsit for money had and received to the use of such own- er.   *Jones* v. *Hoar*, 5 Pick. 285 ; *Glass Co.* v. *Walcott*, 2 Allen 277 ; *Mann* v. *Lock*, 11 N. H. 246 ; *Smith* v. *Smith*, 43 N. H. 536-

But this would seem to be a case where the plaintiff may have an election of actions.   The purchaser went into possession by the consent and license of the vendor to hold under him till a deed should be given, and he enjoyed a beneficial use of the premises, but if the purchaser refuses to complete the contract the vendor has the right, we think, to treat him as a trespasser, or as a tenant at will, at his election.   If the deed had been given pursuant to the parol agreement, then the tenancy at will would have been merged in the executed contract, which would relate back to the time that possession was given under the agreement, and in that case no action of trespass could arise.

Where a man under a contract of purchase, by permission of the ven- dor, enters upon the premises and enjoys a beneficial use, and after- wards fails to complete the purchase, it is doing no more violence to the real contract or to the facts in the case, to hold that the purchaser was during this time a tenant at will, and that the law implies a promise to pay reasonable rent for such beneficial use, where the real contract is re- scinded, than it is to hold that the purchaser originally, with force and arms, broke and entered the plaintiff's close, for such was in no sense the fact.   Instead, therefore, of the plaintiff's waiving the tort, there was, in fact, no tort to waive.   But the plaintiff by refusing to perform his contract, has put himself in a position where he may be properly treated as a trespasser, or as a tenant, with equal propriety at the elec- tion of the owner, having placed himself in that position by his own wrong act, subsequent to his entry, though in fact he did not enter eith- er as a trespasser or as a tenant.   We think, therefore, that the decision in *Clough* v. *Hosford*, *supra*, was clearly right, not for the reason there stated, that the tort might be waived and assumpsit brought, but because there is an election of remedies where the owner may treat the occupant either as a tenant or as a trespasser, when in fact he was neith- er, but where in consequence of his own wrong act, he may readily, by a fiction of law, be converted into either.   *Alton* v. *Pickering*, 9 N. H. 494.

There are many cases where a person may have an election of actions. A mortgagee may treat every person whom he finds in possession of the

mortgaged premises, whose title is not good as against him, as a wrong doer and a disseisor, at his election, and no disseisor can qualify his wrong by alleging that he is seized of a less estate than a fee. *Wilson* v. *Webster*, 6 N. H. 419; *Towle* v. *Ayer*, 8 N. H. 57; *Wheeler* v. *Bates*, 21 N. H. 460; *Toppan* v. *Toppan*, 35 N. H. 410; *Stark* v. *Brown*, 40 N. H. 345. So a case of bailment of goods presents a familiar instance of the election of remedies. If the goods are wrongfully applied, assumpsit will lie for a breach of the implied promise, or trover for a conversion. *Govett* v. *Radridge*, 3 East. 62-70; *Murray* v. *Barling*, 10 Johns. 172, 176; *Lockwood* v. *Ball*, 1 Cow. 322, 334. So a party may often elect between debt and covenant; 1 Ch. Pl. 117. So also, if after the expiration of a term the tenant continues to hold over without paying rent, the landlord may elect to treat him as a trespasser or as a tenant. Taylor's Land. and Ten. sec. 22. This last case is quite analogous to the one we are now considering.

Perhaps one reason why the law has been holden differently in Massachusetts and New Hampshire from the holding in New York, may be that in the two former the action of ejectment is not now and has not been for many years in use. Jackson, in the preface to his work on Real Actions, page 1, after alluding to the fact that it is more than three centuries since the common real actions have been almost wholly disused in England, their place being supplied by the action of ejectment, says: "The action of ejectment has never been in common use in this part of our country; the writ of entry on disseizin being found a more convenient and effectual remedy, and being maintainable in every case in which ejectment would lie."

Now, however it may have been in Massachusetts, we know that the writ of ejectment was in common use in the Province of New Hampshire before the Revolution. See Belknap's Hist. of N. H., Farmer's Ed., pages 159, 163 and 165. And we can hardly doubt that the same was the case in Massachusetts; for though there may be no case reported in the printed reports of that State, as there is none in the printed reports of our own, where ejectment was the remedy made use of, yet the action of ejectment is spoken of and would seem to be referred to as a remedy well known in Massachusetts, in the following cases: *Commonwealth* v. *Peters*, 2 Mass. 127; *Perley* v. *Chandler*, 6 Mass. 456; *Adams* v. *Emerson*, 6 Pick. 58; *Otis* v. *Smith*, 9 Pick. 297.

Ejectment was early recognized as a legal remedy in this State. N. H. Laws, (1815) p. 105; Act of 1791, also p. 108; Act of 1797, N. H. Laws, (1830) 95 and 96, Act of 1829. So in the Revised Statutes, ch. 182, sec. 8, the form of the writ in ejectment is prescribed. But in practice the action of ejectment has not been used in this State for many years and perhaps for a still longer term in Massachusetts. Had this action continued in common use in these two States as it did in New York, there would have been the same necessity for bringing trespass for the mesne profits, as we have already seen.

But as it has long been disused, though still recognized in this State as a legal and proper form of action, there has been no necessity of adhering to the action of trespass, in cases like this, where it is found that

assumpsit for use and occupation is quite as appropriate and as equitable a remedy as the other.

Plaintiff will have judgment for $200 on the $275 note, with interest from March 14, 1856, also on the $23 note, with interest from its date, deducting $120 for the use and occupation of the premises, with interest from date of writ.

*Judgment for plaintiff.*