SIDNEY A. NEWMAN, Appellant, *v.* FRANCIS X. BECKWITH, Respondent.

Where a sheriff, who, at the expiration of his term of office, has in his hands process not fully executed, dies before the complete execution thereof, his late under sheriff becomes substituted in his place assumes all his duties and liabilities in respect to such process, and for moneys collected by him, by virtue thereof, is personally liable.

This liability is not affected by the provision of the Revised Statutes (1 R. S., 379, § 72) providing that, where an under sheriff executes the office of sheriff, his default and misfeasance shall be a breach of the sheriff's bond as well as his own. The effect of this provision is, that, in such case, the representatives of the deceased sheriff and his sureties are also bound.

*Newman* v. *Beckwith* (5 Lans., 80) reversed.

(Argued May 25, 1874; decided September term, 1874.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee and granting a new trial. (Reported below, 5 Lans., 80.)

This was an action brought against defendant, as late under sheriff of the county of Monroe, to recover moneys collected by him after the death of Alonzo Chapman, late sheriff, by whom he was appointed.

In December, 1867, plaintiff's assignors commenced an action in the Supreme Court against one Easton and an attachment was issued therein to said Chapman, then sheriff.

The attachment was put into the hands of defendant, Beckwith, under sheriff, and by virtue thereof he levied on property of Easton. Chapman's term of office expired December 31st, 1867. He died October 7th, 1868. In June, 1868, the plaintiff in said action recovered a judgment for $1,764.61. On the tenth of July following execution was issued thereon and delivered to defendant, who indorsed thereon its receipt, signing as follows: " Alonzo Chapman, late sheriff, by F. X. Beckwith, late under sheriff." An appeal was taken to the General Term and execution stayed. The judgment was affirmed, and judgment to that effect perfected December

14th, 1868, and another execution was delivered to defendant for the costs. Defendant collected the full amount of the two executions. He paid over a portion, but retained in his hands $948.03, over and above his fees, to recover which this action was brought.

*John Van Voorhis* for the appellant. It was Chapman's duty to complete the collection of the debt for which the attachment was issued after his term of office expired. (1 R. S. [Edm. ed.], 458, § 71.) In case of vacancy in the office of sheriff by the death of the sheriff the under sheriff should execute the duties of the office. '(3 Geo. I, chap. 15, § 18; 1 R. S. [Edm. ed.], 350, §§ 67, 68, 71, 72, 82; Atkins' Sher. Law, 40; Watson's Off. of Sher., 32; *Boardman* v. *Halliday*, 10 Paige, 230.) A neglect or refusal of a sheriff to pay moneys collected by him on execution is a default, and a breach of the condition of his bond. (*People* v. *Brush*, 6 Wend., 454; *Hughes* v. *Smith*, 5 J. R., 167; *Rineleader* v. *Mather*, 5 Wend., 102; 18 J. R., 390.) Plaintiff was entitled to recover. (*Cameron* v. *Reynolds*, 1 Cowp., 403; *Paddock* v. *Cameron*, 8 Cow., 212; *Colvin* v. *Holbrook*, 2 Comst., 126; *Boardman* v. *Halliday*, 10 Paige, 223; *People* v. *Dunning*, 1 Wend., 17; *Walden* v. *Davison*, 5 id., 574; *Mason* v. *Sudam*, 2 J. Ch., 172; *Ayre* v. *Aden*, Cro. J., 73; *Clarke* v. *Withers*, 1 Salk., 322; 2 Ld. Raym., 1072; *Wilcox* v. *Pokenhorn*, 1 Barnadis., 81; *Cooper* v. *Chitty*, 1 Black, 65; *Ward* v. *Story*, 18 J. R., 120.) The deputy sheriff occupied the place of his principal, as a principal, and was liable for mis-feasance or non-feasance in office. (*Watson* v. *King*, 4 Camp., 174; *Wallace* v. *Cook*, 5 Esp., 117; *Lepard* v. *Vernon*, 2 V. & B., 51; *Hunt* v. *Roasmanier*, 8 Wheat., 200; *Coombe's Case*, 9 Coke, 766.) An action for money had and received was proper. (*Walden* v. *Davison*, 15 Wend., 574; *People* v. *Dunning*, 1 id., 17; *Graydon* v. *Stone*, 1 Edm., 221.)

*Joseph A. Stull* for the respondent. This action cannot be maintained. (Allen on Sheriffs, 88; *Cameron* v. *Reynolds*, Cowp., 403; *Paddock* v. *Cameron*, 8 Cow., 212; *Denny* v.

*Manhat. Co.*, 2 Den., 115 ; *Colvin* v. *Holbrook*, 2 Comst., 126 ; Crocker on Sheriffs, § 19.)   The expiration of Chapman's term of office, and his subsequent death, did not give plaintiff a right of action against defendant, or change the nature of their relations.   (2 R. S. [Edm. ed.], 457 [439], § 69 ; subd. 5, § 71 ; *Boardman* v. *Halliday*, 10 Paige, 231 ; R. L. of 1813, 418–420, § 3 ; *Paddock* v. *Cameron*, 8 Cow., 213 ; 1 R. S. [Edm. ed.], 352, § 72 ; Laws 1830, chap. 58, § 24.)

REYNOLDS, C.   The defendant, as the under sheriff and late under sheriff of the county of Monroe, received from the assignors of the plaintiff, in the usual manner, legal process, issued out of the Supreme Court, in the form of an attachment and execution against one Alexander Easton, and undertook, in that capacity, to execute them, and did execute them so far as to collect the money.   A portion of the money thus collected and in his hands he declines to pay over, and to recover this balance the action was brought, and tried before a referee, where the plaintiff recovered.   The judgment entered was reversed by the General Term of the Supreme Court, and a new trial ordered for supposed error of law, and the case comes up before us on an appeal from that order by the plaintiff.

The defendant was the under sheriff of Alonzo Chapman, whose term of office as sheriff of the county of Monroe expired on the 31st day of December, 1867.   On the prior 7th day of October, 1867, an attachment was issued to the sheriff of the county of Monroe, in an action in which John Van Voorhees and others were plaintiffs, and Alexander Easton defendant, and delivered to the defendant as under sheriff, for execution, and under it, on the same day, he attached sufficient property of Easton's to satisfy the plaintiff's claim, and retained it in his custody.   The action in which the attachment issued proceeded to judgment, and on the 22d day of June, 1868, the plaintiffs recovered $1,774.61, and on the 10th day of July, 1868, an execution on the judgment was issued and delivered to the defendant as late under sheriff,

and he undertook to execute the same, having still in his custody the property of Easton previously attached. On the 14th day of December, 1868, another judgment for costs of appeal in the same action was recovered by the plaintiffs, and an execution thereon delivered to the defendant, which he also undertook to execute. In February, 1869, the defendant received, to apply on the execution before named, $1,271.15, and paid the plaintiffs $1,119.16 thereof, but refused to pay the balance realized by him on the executions, amounting to between $800 and $900. After Chapman's term of office as sheriff had expired, and while acting as late sheriff, and after the largest of the executions had been received by the defendant as late under sheriff, and on the 9th of October, 1868, he died, and this circumstance creates the present difficulty. If Chapman had lived, and the defendant had made any default as late under sheriff, it does not appear to be questioned that an action for redress must have been brought against the late sheriff, precisely as if the default had occurred during his term of office, by the action of the under sheriff or of a deputy.

In this case the death of Chapman produced no vacancy in the office of sheriff of the county of Monroe, and the statutes do not appear in terms to provide for the case of the death of a late sheriff having unexecuted and unfinished process in his hands. In the case of a vacancy in the office of sheriff, it is provided that the under sheriff " shall in all things execute the office of sheriff" until the vacancy is filled. (1 R. S. [Edm. ed.], 350, § 72.) A vacancy might happen by death or for various other causes, and in such case there is for the time being no sheriff of the county, but the under sheriff in the interval executes the office. If the under sheriff, while in such a case executing the office of sheriff, should commit a wrong for which the aggrieved party had a right of action, I do not think the action could be maintained against the representative of the deceased sheriff, or against his sureties on his official bond. Such an action would appear to me to be incongruous and

absurd. The action must necessarily be against him who undertook, upon his own responsibility, to do the wrong.

The statute provides that the sheriff going out of office shall, notwithstanding, " proceed and complete the execution of all final process and attachments which he shall have begun to execute, by a collection of money thereon, or by a levy on property in pursuance thereof." This, obviously, was intended to continue, in the cases named, all the powers of the sheriff, after his term of office had expired, but in case of his death before his duty was fully discharged, no specific provision appears to have been made. I think, however, it may safely be held that it was the intention of the legislature, that in case of the death of a late sheriff, before all his duties were ended, that the late under sheriff might complete them by executing the office (if it be one) or duty, precisely as if the death had occurred during the sheriff's term of office, and with like responsibility. To this extent, I therefore agree with MULLIN, J., in his opinion, but I cannot see how any official relation, of principal and agent can continue between a dead late sheriff and a living late under sheriff, who has authority to complete the former's unfinished business. It does not by any means necessarily follow that a breach of duty by an under sheriff after the death of the sheriff, or by a late under sheriff while performing the duties of a deceased late sheriff, can be regarded as any breach of the official bond of the dead parties. When death overtook either, their personal and official responsibility for the acts of others ceased, and the notion of the continuance after that of any relation of principal and agent, by any sort of fiction of the law, cannot be sustained. In such cases the under sheriff, or the late under sheriff, performs the duty upon his own responsibility, and must be personally responsible for his acts.

In my judgment the defence is somewhat technical and ungracious. The defendant assumed to take the plaintiff's processes as under sheriff, and as late under sheriff, and execute them. The smaller execution he received after the death of Chapman, and all the money he realized by virtue of the

process came to him after his principal was dead. There is no further duty for him to perform, save to pay over to the plaintiff the money in his hands, collected by virtue of process under the plaintiff's judgment. It is not pretended that if he does so he will not be relieved from all further responsibility, from any source. If there be any question about that, it is our duty to relieve him from doubt by determining that he was bound to pay, and directing that the order appealed from be reversed, and the judgment on the report of the referee be affirmed, with costs in all the courts.

DWIGHT, C. The Revised Statutes provide that when a sheriff goes out of office, and his successor is elected and duly qualified, the former sheriff's powers shall cease, except as otherwise provided by law.

Another section provides that, notwithstanding the election or appointment of a new sheriff, the former sheriff shall return, in his own name, all attachments and executions which he shall have fully executed; and shall proceed and complete the execution of all final process and attachments which he shall have begun to execute, by a collection of money or a levy on property. (2 R. S., 439, §§ 67–72.)

The business in the sheriff's office is thus divided into two or more classes: the old business to be finished up by former sheriffs; and the new business undertaken by the sheriff in office.

It is plain that a vacancy may occur in the new sheriff's office; or the former sheriff may die or be otherwise incapacitated from completing the business which he has commenced while in office. The statutes have made clear provision in the first case, and the question now to be considered is, whether the statutory rule can be extended to the case of a disability to act on the part of the former sheriff.

The section to be construed is in the following terms:

"Whenever a vacancy shall occur in the office of sheriff of any county the under sheriff of such county shall, in all things, execute the office of sheriff of the county until a

sheriff shall be elected or appointed, and duly qualified, etc." (1 R. S., 379, § 72.)

The primary application of the section is, of course, to the sheriff fully in office. It is copied, in substance, from the English statute, 3 George I, c. 15, which is based on the theory that the under sheriff becomes temporarily high sheriff. (Sec. 11.) The spirit of the statute, however, extends also to the case of the former sheriff.

For the purpose of performing the unfinished business he has all the powers of a full sheriff. He may levy on property, and sell on an execution. He may, if resisted, call on " the power of the county to " aid him. He is liable for his mistakes; punishable for extortion or misfeasance in office as a sheriff is. If all these results did not attend the execution of his duties, suitors would fail to receive the full benefit of judgments in their favor, and the public would sustain injury. He is a *quasi* sheriff, and, considering the beneficial effect of such a construction, it is not seriously straining the terms of the section above referred to, to hold that whenever a " vacancy occurs in the office " of the former, or now *quasi* sheriff, his former under sheriff shall execute his duties, and carry on the unfinished business to completion. Without extending the statutes concerning sheriffs to the case of the death of the former sheriff, leaving the business unsettled, there is no provision by which that can be fully terminated. It cannot be supposed that this was the intent of the legislature, except on the most satisfactory grounds.

Assuming that this construction is correct, the next matter to be examined is, whether, in case of a vacancy in office, the under sheriff acts as an agent of the former sheriff, or whether he becomes himself sheriff. It is only necessary to consider this point so far as it bears upon the death of a former sheriff. The contingency is °expressly provided for by statute when, *at the time* the new sheriff comes into office, an under sheriff is executing its duties. The language of the statute is : " If, at the time when any new sheriff shall have qualified and given the security required by law, the office of

the former sheriff shall be executed by his under sheriff, or by a coroner of the county, or by any other person specially authorized for that purpose, such under sheriff, coroner, or other person shall, in all things, comply with the 'preceding' provisions, and shall perform the duties required of such former sheriff." The "preceding" provisions here referred to are, among others, the completion of unfinished business. (2 R. S., 439, § 74.) It will be observed that the coroner, under sheriff and "person specially authorized" are here grouped together; whatever position the coroner holds is also maintained by the under sheriff. On consulting the sections which provide for a coroner's duties when there is a vacancy in the office of a full sheriff, it appears that he executes the office of sheriff. This is also true of the person "specially appointed" where there is no coroner qualified to serve. (1 R. S., 380, 381, §§ 78–86.) It is true that section 74, above cited, does not apply literally to the case where the former sheriff survives the assumption of office by the new sheriff, and then dies, for, in that case, the office of the former sheriff would not, *at the time* when the new sheriff qualified, be executed by the under sheriff. Still, no reason can be given why the rule which prevails in one case should not be applied in the other. It would be a strange anomaly to hold that if the under sheriff happened to be executing the business of the former sheriff at the moment the new sheriff assumed the duties of his own office, he himself should be the *quasi* sheriff; but if his functions commenced a few days later he should not be, but only an agent or servant of the former sheriff, who is himself dead, or in some other manner wholly disabled from acting. A construction which makes a person a statutory agent of a dead man should be avoided, if possible.

The result at which I have arrived is, that when a former sheriff, having unfinished business on his hands, dies after the induction of a new sheriff into office, the former under sheriff becomes substituted in the place of the former sheriff, and assumes all his duties and liabilities in respect to such

unfinished business. One of those liabilities is to pay over to a creditor moneys collected on an execution.

These conclusions are not affected by the clause in 1 Revised Statutes, 379, section 72, referring to the breach of the condition of the sheriff's and under sheriff's bond. That provides that when the under sheriff executes the office of sheriff, his default or misfeasance in office shall be a breach of the condition of the sheriff's bond as well as his own.

The effect of this is, that in the case now under examination the sheriff's representatives, as well as the sureties on his official bond, would become bound as sureties for the good conduct of the under sheriff as to the unfinished business, and would have their remedy over against the under sheriff and the sureties on his bond.

The application of the principles already discussed in this opinion to the facts of the present case will now be briefly stated.

The plaintiff claims as assignee of judgments and executions against one Easton. The assignment was made February 20, 1869. Subsequently to this date, the defendant collected on the executions, as under sheriff of Alonzo Chapman, former sheriff of Monroe county, $948.03 over and above his fees. Chapman was sheriff until December 31, 1867, and an attachment in the action had been issued while he was in office. After his term expired he continued to transact the unfinished business. On October 7, 1868, he died. The executions under which the defendant proceeded were issued in July and December, 1868.

The facts plainly present the case of an under sheriff transacting business unfinished by the former sheriff after his death and after the new sheriff is in office. He must be treated as sheriff, and liable to pay over to the plaintiffs the moneys collected on the executions.

The order of the General Term should be reversed, and that entered on the report of the referee should be affirmed.

All concur.

Order reversed and judgment accordingly.