BARNEY DICKINSON, as Sheriff of Delaware County, Respondent, *v.* WILLIAM C. OLIVER, Appellant.

Practice — binding effect of stipulation as to parties — paper held to be chattel mortgage and invalid because not filed.

On the death of a sheriff who had brought an action for conversion of chattels, in which he had a special property by virtue of a levy, strict legal procedure requires that the action should be continued by the under sheriff as such, but it is competent for the parties to stipulate that the successor to the office of sheriff shall be substituted as plaintiff, in his official capacity, and an order of substitution made thereon is binding on defendant. In such case the trial court may take judicial notice of the stipulation and order.

The right to redeem is the essential characteristic of a mortgage, and a bill of sale of chattels with a separate defeasance is as clearly a mortgage as if the defeasance formed part of the bill of sale. An agreement to re sell the same property for the same price, made at the same time and between the same parties, is a defeasance.

One D., being indebted to defendant, gave him a bill of sale of certain personal property in consideration substantially of such indebtedness, under an arrangement by which defendant was to "lease" the property to D. in consideration of the payment of the interest on the purchase price; that is, upon the amount of the original indebtedness from D. to defendant. A paper was executed pursuant to this agreement by which D. was to remain in possession of the property as agent of defendant, the defendant, however, to have the right to remove the property at any time. *Held*, upon examination of the terms of the so-called "lease," that there was a right to redeem, and when read with the bill of sale, it had the characteristics of and was a chattel mortgage, and not having been filed, was invalid against a judgment creditor of D.

*Dickinson* v. *Oliver*, 127 App. Div. 932, affirmed.

(Argued April 1, 1909; decided April 27, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 24, 1908, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*M. Linn Bruce* for appellant. The court erred in directing a verdict for the plaintiff as there were questions of fact which should have been submitted to the jury for their determination. (*Susman* v. *Whyard*, 149 N. Y. 127; Jones on Chattel Mortgages, 2; *Smith* v. *Beattie*, 31 N. Y. 542; *Parshall* v. *Eggert*, 54 N. Y. 18; *Hone* v. *Keteltas*, 46 N. Y. 605; *Haussknecht* v. *Smith*, 11 App. Div. 185; *Wilson* v. *Parshall*, 129 N. Y. 223; *Waldron* v. *Fargo*, 170 N. Y. 130; *Bank of Monongahela Valley* v. *Weston*, 159 N. Y. 201; *McDonald* v. *M. S. Ry. Co.*, 167 N. Y. 66.) The trial court erred in denying defendant's motion to dismiss the complaint upon the ground that the plaintiff had failed to prove a cause of action. (*Lewis* v. *Duane*, 141 N. Y. 302; *Scott* v. *Morgan*, 94 N. Y. 508; *Moore* v. *Westervelt*, 27 N. Y. 234; *A. B. & C. Co.* v. *Babbitt*, 74 N. Y. 395; *Sweezey* v. *Lott*, 21 N. Y. 481; *Wood* v. *Bodine*, 32 Hun, 354; *Steffin* v. *Steffin*, 4 Civ. Pro. Rep. 179; *Peck* v. *Tiffany*, 2 N. Y. 451.)·

*George A. Fisher* for respondent. The substitution of Barney Dickinson, as sheriff of Delaware county, the successor of Leroy Smith, deceased, as plaintiff, was made upon his application and consent and the stipulation of the defendant's attorneys, and is binding and conclusive upon the defendant. (*Underhill* v. *Crawford*, 29 Barb. 664; *Smith* v. *Zalinski*, 94 N. Y. 519; *Gibson* v. *Nat. Park Bank*, 98 N. Y. 87; *Greenwood* v. *Marvin*, 111 N. Y. 423; *Williams* v. *Barkley*, 165 N. Y. 48; *Riley* v. *Gitterman*, 24 Abb. [N. C.] 87; *Matter of N. Y., L. & W. R. R. Co.*, 98 N. Y. 447; *Dubuc* v. *Lazell*, 182 N. Y. 482; *Ducker* v. *Rapp*, 67 N. Y. 464;

*Cox* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 414.) Such substitution was proper, and in fact was the only substitution that could be legally made. (Code Civ. Pro. § 766 ; Crocker on Sheriffs, 421, § 826 ; *Barker* v. *Knapp*, 6 Johns. 195 ; *Earl* v. *Camp*, 16 Wend. 561 ; *Dezell* v. *Odell*, 3 Hill, 215 ; *Dickinson* v. *Oliver*, 112 App. Div. 806 ; *Orser* v. *G. Woolen Co.*, 60 Barb. 371 ; *Collins* v. *Donohue*, 46 N. Y. S. R. 478.) The bill of sale and agreement read together as one instrument were in legal effect a chattel mortgage, and not having been filed in the town clerk's office as required by law and there never having been any actual change of possession of the property, it was the duty of the court to direct a verdict in favor of the plaintiff. (*Dickinson* v. *Oliver*, 96 App. Div. 65 ; *Janes* v. *Gould*, 123 App. Div. 236 ; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 341 ; *Stephens* v. *M. B. Co.*, 160 N. Y. 179 ; *Brady* v. *Cassidy*, 104 N. Y. 147, *Storz* v. *Kinzler*, 73 App. Div. 382 ; *People* v. *Cook*, 8 N. Y. 74 ; *Peterson* v. *Clark*, 15 Johns. 205 ; *Cagger* v. *Lansing*, 61 N. Y. 427; *Matthews* v. *Sherman*, 69 N. Y. 585 ; *Kraemer* v. *Adelsberger*, 122 N. Y. 467.)

VANN, J. This action was brought by Leroy Smith, as sheriff of Delaware county, to recover damages for the conversion of certain chattels in which he had a special property by virtue of a levy made under execution. Sheriff Smith having died after the action had been tried twice, and while he was still in office, Barney Dickinson, the under-sheriff, was appointed his successor. Thereupon the attorneys for the defendant stipulated " that upon the application of Barney Dickinson, as successor in office of Leroy Smith, late sheriff of the county of Delaware, which is hereto attached, the said Barney Dickinson, as sheriff of the county of Delaware, may be substituted as the party plaintiff in the above-entitled action in the place and stead of Leroy Smith, now deceased, and that an order may be entered accordingly by the Supreme Court at any time without notice to us of such application." Upon this stipulation and " the application of Barney Dickin-

son, the present sheriff of Delaware County," and on motion of the "attorneys for plaintiff," an order was made on the 4th of April, 1903, by the Supreme Court at Special Term, "that Barney Dickinson, as sheriff of Delaware County, be and he hereby is substituted as party plaintiff in the above-entitled action in the place and stead of Leroy Smith as sheriff of Delaware County, who is now dead and that said action be continued in the name of said Barney Dickinson, as sheriff of the county of Delaware, as plaintiff therein."

Mr. Dickinson ceased to be sheriff on the 1st of January, 1904, and one Kilpatrick was elected his successor who in turn was succeeded by Sheriff Warner, the present incumbent, all of whom were alive when the trial now under review took place.

The action has been tried four times and on the last trial the defendant moved for a nonsuit on the ground that the action could be continued, if at all, only by the personal representatives or successors in interest of Leroy Smith; that the plaintiff was not then the sheriff of Delaware county and that there was no proof of any cause of action in his favor either originally, by assignment or by succession. The motion was denied and the defendant excepted.

A sheriff who levies upon chattels by virtue of an execution acquires a special property therein and may sue any one who takes them from his possession, as for goods rescued, either to recover the possession thereof or damages for their conversion. (*Barker* v. *Binninger*, 14 N. Y. 270, 279; *Barker* v. *Miller*, 6 Johns. 195; *Lockwood* v. *Bull*, 1 Cow. 322; *Earl* v. *Camp*, 16 Wend. 562; *Dezell* v. *Odell*, 3 Hill, 215, 218; Crocker on Sheriffs [2nd ed.], § 826; Smith on Sheriffs, Constables and Coroners, 528; Murfree on Sheriffs, § 892.) Therefore, if the goods in question did not belong to the defendant and he took them from the possession of the sheriff without right, this action was well brought by Mr. Smith in his official capacity. When he died it is clear that the action did not abate, but who had the right to carry it on, either with or without substitution? (*Newman* v. *Beckwith*, 61 N. Y. 205.)

The Revised Statutes provided in substance and the Code

of Civil Procedure now provides that " Notwithstanding the election or appointment of a new sheriff, the former sheriff must return, in his own name, each mandate which he has fully executed ; and must proceed with and complete the execution of each mandate which he has begun to execute " by the collection of money thereon, or " by a seizure of or levy on money or other property, in pursuance thereof." (Code Civ. Pro. § 186, and clause 4 of § 184.)

" If, at the time when the new sheriff qualifies, and gives the security required by law, the office of the former sheriff is executed by his under-sheriff, or by a coroner of the county, or a person specially authorized for that purpose, he must comply with the provisions of this title, and perform the duties thereby required of the former sheriff." (Id. § 189.)

" Where an action or special proceeding is authorized or directed by law, to be brought by or in the name of a public officer, or by a receiver, or other trustee, appointed by virtue of a statute, his death or removal does not abate the action or special proceeding ; but the same may be continued by his successor, who must, upon his application, or that of a party interested, be substituted for that purpose, by the order of the court, a copy of which must be annexed to the judgment roll." (Id. § 766.)

" Where the sheriff, to whom an execution is delivered, dies, is removed from office, or becomes otherwise disqualified to act, before the execution is returned, his under-sheriff must proceed upon the execution, as the sheriff might have done. If there is no under-sheriff, the court, from which the execution issued, may designate a person to proceed thereupon ; who may complete the same, as an under-sheriff might have done." (Id. § 1388.)

We think that section 766 applies to actions brought under the authority of a statute rather than to those brought under the authority of the common law. If, therefore, strict legal procedure had been insisted on by the defendant upon the death of the sheriff, the action should have been continued by Mr. Dickinson as under-sheriff, or late under-sheriff, by sub-

stitution or otherwise, and not as sheriff. (Id. §§ 189 and 1388.) Parties by agreement, however, may to some extent regulate practice for themselves, and when the defendant, in a representative action brought for the benefit of creditors, stipulated for the substitution of Dickinson as sheriff, and the court made an order of substitution accordingly, which still stands in full force, he bound himself and cannot now object that the substitution was irregular. (112 App. Div. 806, 807.)

Neither the stipulation nor the order provided for a supplemental complaint, and when the case was last moved the defendant entered upon the trial without objection, and did not insist that a change in the pleading was necessary until after evidence had been offered by the plaintiff, and then not by motion, or directly, but indirectly by objecting to such evidence upon the ground "that, under the complaint in this action, it is no foundation for a recovery in favor of this plaintiff." In view of these facts the trial court had the right to read the stipulation and order in connection with the complaint, so that the action, which had been so long in court, might proceed to a determination on the merits without further delay. Facts of which the court takes judicial notice need not be alleged or proved. (*Matter of Viemeister*, 179 N. Y. 235, 240.)

On the 12th of October, 1901, the execution in question was issued against the property of Archbold W. Dickson upon a judgment that had been recovered against him in favor of James K. Penfield and others for the sum of $636.47. A levy was promptly made by the sheriff upon some cows and farming utensils in the possession of the judgment debtor on his farm and also upon some young cattle on premises adjoining, where he had hired pasture. The defendant, claiming to own the most of the property under a bill of sale from Dickson, took it away and refused to restore it upon demand. Thereupon the sheriff brought this action to recover damages for an alleged conversion.

Dickson had owned the farm for several years prior to the 5th of February, 1900, when he gave the defendant a chattel

mortgage on the property in question to secure the payment of a precedent debt for $658.46, but the mortgage was not filed, because, as the mortgagee testified, he did not know it was necessary. On learning that his mortgage was not good as against creditors, the defendant took a new mortgage from Dickson for the same debt, dated August 27th, 1900, and surrendered the old one. This mortgage was not filed owing to the request of Dickson and his promise to soon pay the debt. He did not pay as was expected, and the defendant became uneasy about his debt. On Friday, November 9th, 1900, at the office of his attorney in Andes, he had an interview with Dickson, insisting that something should be done about the chattel mortgage, and stating that he would prefer to have a bill of sale. According to the testimony of the defendant, which is more favorable to himself than that of any other witness, before any papers were drawn it was substantially arranged that a bill of sale should be given from Dickson to Oliver and a lease from Oliver to Dickson so that he could remain in possession of the property. The old mortgage was to be surrendered and $6.34 in cash paid by Oliver to Dickson, making an even $700 as the consideration for the bill of sale. The business was not completed on that occasion, but the terms were practically agreed upon and a bill of sale covering simply the property described in the mortgage and reciting a consideration of $700, made up of the amount due on the mortgage, an order previously paid for $25 and $6.34 in cash, was drawn and executed. The lease was not drawn that night, but it was arranged that one should be drawn and that Dickson should remain in the possession of the property by paying interest on the sum of $700, or a rental of $42 a year. The transaction was to be concluded on the following Monday, November 12th, when the defendant was to go to the farm and take possession of the property. Accordingly, on Monday he went to the farm and took formal possession by placing his hands on every cow and every farming implement embraced in the old mortgage and the new bill of sale. He had prepared a " lease " in accordance with the arrangement

made on the preceding Friday and it was executed by both parties ; the old mortgage was surrended and the sum of $6.34 paid. The property was left in the possession of Dickson and none of the papers were filed, and such was the situation when the levy was make by Dickinson, the under-sheriff, on the 12th of October, 1901.

The bill of sale was in the ordinary form and bore the date of November 9th, 1900. The "lease" was as follows : "This agreement, made this 12th day of November, 1900, between W. C. Oliver of Andes, N. Y., and Archie W. Dickson of the same place — Witnesseth as follows — that the said Dickson did on the 9th day of November, 1900, sell and transfer to said Oliver certain personal property described in a bill of sale bearing date. November 9, 1900, for the price or sum of Seven Hundred Dollars ($700), and which said property has this day been delivered to said Oliver by said Dickson, and said Oliver has received and taken possession of the same. That the said sum of seven hundred dollars ($700) has been paid by the said Oliver to said Dickson. Now, therefore, it is mutually agreed that the said Dickson shall take care of and feed said stock with his own feed and grain and have the use of the cows and personal property to November 12, 1901, by paying said Oliver the interest on said purchase price, but that such possession of said Dickson shall only be as the agent of said Oliver, Oliver to have the right to remove said property at any time. It is further agreed that if said Dickson shall at any time before November 12th, 1901, pay said Oliver the amount of said purchase price of said property and interest, then said Oliver agrees to sell the same to him for that sum and deliver what remains of the property upon payment thereof."

I think, as the Appellate Division held on the first appeal, that these instruments when construed in the light of the surrounding circumstances constitute a chattel mortgage as matter of law. (96 App. Div. 65.) They relate to the same property, were agreed upon the same day and were executed at substantially the same time. Both rest on the old debt, for

which two chattel mortgages had been given, one in February and the other in August, 1900, but neither having been filed as required by law they were void as to creditors. The mortgagee became anxious and told the mortgagor that something must be done about the mortgage. Before either paper was executed, to repeat the words of the defendant, "we made an arrangement that night that there would be a lease drawn. We agreed upon a skeleton of a lease. * * * It was talked at the time that the bill of sale was drawn that he should remain in possession of the property by paying $42 a year for the use of it, if we agreed upon the lease."

While the bill of sale was executed Friday night, the transaction was not completed until Monday morning, when an agreement called a lease was executed and the old mortgage, which formed the consideration for the bill of sale, was surrendered. The bill of sale was formal, but the agreement had some peculiar features. The word "lease" does not appear in it, but it provides that Dickson was to have the use of the eighteen cows and the farming implements in question for one year by paying Oliver the interest, named as such, on the old debt for one year, or the sum of $42. The rental value of the cows alone for that period was materially more than $100. He was also to feed and care for nine heifers from which he could derive no income. In other words, *under the new arrangement he was to do and have substantially what he had to do and had under the old.* He was to remain in possession of the property, not as lessee or tenant, but as agent. More significant than all, there was a defeasance clause, for, on payment of the old debt and interest, he was to have the property. The right to redeem is the essential characteristic of a mortgage, and " a bill of sale of chattels with a separate defeasance is as clearly a mortgage as if the defeasance formed part of the bill of sale." (*Mooney* v. *Byrne*, 163 N. Y. 86, 92; *Brown* v. *Bement*, 8 Johns. 96; Jones on Chattel Mortgages, § 19.) An agreement to re-sell the same property, for the same price, made at the same time and between the same parties, is a defeasance.

The nature of an instrument is determined from its legal effect and in what feature did the legal effect of these papers differ from the effect of a chattel mortgage? There was even the equivalent of a safety clause, for Oliver was " to have the right to remove said property at any time." A lease for a year entitles the lessee to possession for a year, and yet this alleged lease authorized the lessor to take possession at any time. Such a clause is foreign to a lease but usual in a chattel mortgage. No rent was reserved, as such, but there was a promise to pay "interest" and the interest was simply on the old debt. This was not a lease, but, when read with the bill of sale, was a chattel mortgage clothed in some of the garments of a lease. Neither in substance nor outward appearance was there any change in the new arrangement from the old, for the payment of $6.34 in cash to make an even $700 is unworthy of notice. Assuming, as the defendant testified, that nothing was said about securing the debt, the necessary effect of the transaction as a whole was to secure the old debt and nothing else was effected. The sale was not absolute, for payment of the debt, suavely called the "purchase price," was to make Dickson the absolute owner as before.

If instruments such as those under consideration can be executed under the circumstances stated and have the effect claimed for them by the appellant, as was said by the court below, "they constitute a lawful substitute for a chattel mortgage without the necessity of filing the same, and the provision of law as to the filing of a chattel mortgage may thus be evaded." (96 App. Div. 65, 68.) Such a rule would practically overturn the law as it has been generally understood for many years and would leave creditors helpless, for they could not protect themselves against an arrangement which, although secret, was lawful. No one could safely give credit on the faith of the possession and the apparent ownership of personal property, for the title might be in some person unknown and the possession that of a lessee merely. The evidence of title might be secreted in some private place instead of being filed

in a public office open to inspection by all. A door to fraud would be opened and many would enter to the injury of credit and the confusion of business.

As we declared in a recent case, where a secret effort made to evade the necessity of filing met with failure: "The statute contemplates the protection of creditors against secret arrangements to withhold the filing of chattel mortgages. It commands publicity. The recognition of an agreement, such as the one upon which the defendant relies, would not only circumvent the statute, but would facilitate results which it was designed to prevent." (*Tooker v. Siegel-Cooper Co.*, 194 N. Y 442, 448.)

I think the trial court was right in directing a verdict for the plaintiff and in refusing to allow the defendant to go to the jury upon the question as to whether there was a sale or a mortgage, which was all that he asked to have them pass upon. The judgment of the Appellate Division should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT and CHASE, JJ., concur; WILLARD BARTLETT, J., dissents on the ground that there was a question for the jury, and as to all other matters concurs.

Judgment affirmed.